

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS
XXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Drew S. Davis
County Attorney
San Augustine County
San Augustine, Texas

Dear Sir:

Opinion No. O-6920
Re: (1) Proper time to levy taxes
for payment of bonded indebted-
ness of road district;
(2) Basis for adjustment of tax-
rates for common school districts.

We are in receipt of your letter of recent date requesting the opinion of this department on the above stated matters. We quote from your letter as follows:

"When is the proper date for Commissioners' Court to set tax rate for road districts for outstanding indebtedness? Whose duty is it to set the rate or regulate the rate on School Districts that have voted bonds in previous years and the property values have increased as well as the indebtedness for school buildings has been paid off which rate was the constitutional rate (maximum) of one dollar. If this amount is continued to be collected and the amount of money collected would be more than needed, what is the status of the surplus funds arising therefrom?

We are also in receipt of your letter supplementing the above, wherein you stated that the school district involved in the above inquiry was a common school district.

With reference to your question as to the proper time for the commissioners' court to make the annual tax levy and set the tax rate for paying the outstanding indebtedness of a road district, we call your attention to the following statutory provisions:

Article 752e, Vernon's Annotated Civil Statutes, in part provides:

". . . The proposition to be submitted at such election shall specify . . . that ad valorem taxes are to be levied annually on all taxable property within said (road) district . . . sufficient to pay the annual interest and provide a sinking fund to pay the bonds at maturity." (parenthetical matter ours)

Article 752k, Vernon's Annotated Civil Statutes, provides:

"Before such bonds (county, political subdivision or road district bonds) shall be put on the market, the County Commissioners' Court of the county in which such election was held, shall levy an ad valorem tax sufficient to pay the interest on such bonds and to provide a sinking fund to pay the bonds at maturity."

Article 752m, Vernon's Annotated Civil Statutes, provides:

"When such bonds are issued for and on the faith and credit of a political subdivision or road district, such taxes shall be assessed and collected in the same manner as is now provided by law for the assessment and collection of common school district taxes."

Article 2795, Vernon's Annotated Civil States, in part, provides:

"The commissioners' court, at the time of levying taxes for county purposes, shall also levy upon all taxable property within any common school district . . . The tax assessor shall assess said tax as other taxes are assessed. . . . The tax collector shall collect said taxes as other taxes are collected. . . ."

Article 752n, Vernon's Annotated Civil Statutes, in part provides:

"The tax assessor and tax collector of the county wherein such taxes have been levied, shall assess and collect the same in the manner and at the time as other taxes; . . ."

In view of the foregoing provisions, it is out opinion that the annual tax levy for the payment of outstanding indebtedness of a road district should be made and said tax rate set at the same time that other county taxes are levied. As to the time for making the county tax levy, we refer you to our Opini n No. O-2364, which sets out and discusses the statutory requirements with reference to the time for levying county taxes. We are enclosing herewith a copy of this opinion for your convenience.

With reference to your inquiry as to the manner of setting and regulating the tax rate of a common school district, we call your attention to the following statutory provisions:

House Bill No. 800, Acts of the 49th Legislature, Ch. 304, p. 488, which repeals Article 2784, Revised Civil Statutes, provides:

"The commissioners court for the common school districts in its county, and the district school trustees for the independent school districts incorporated for school purposes only, shall have power to levy and cause to be collected the annual taxes and to issue the bonds herein authorized, subject to the following provisions:

"1. In common school districts, for the further maintenance of public free schools and the erection and equipment of school buildings therein, a special tax; and in independent districts for the maintenance of schools therein, an ad valorem tax not to exceed One Dollar and Fifty Cents ($1.50) on the one hundred dollars valuation of taxable property of the district.

"2. In commong school and independent districts, for the purchase, construction, repair or equipment of public free school buildings within the limits of such districts and the purchase of the necessary sites therefor, a tax not to exceed fifty cents (50¢) on the one hundred dollars valuation, such $tax$ to be for the payment of the current interest on and provide a sinking fund sufficient to pay the principal of bonds which said districts are empowered to issue for such purposes.

"3. The amount of maintenance tax, together with the amount of bond tax of any district, shall never exceed One Dollar and Fifty Cents ($1.50) on the one hundred dollars valuation of taxable property; and if the rate of bond tax, together with the rate of maintenance $tax$ voted in the district shall at any time exceed One Dollar and Fifty Cents ($1.50) on the one hundred dollars valuation, such bond tax shall operate to reduce the maintenance tax to the difference between the rate of the bond tax and One Dollar and Fifty Cents ($1.50).

"4. No tax shall be levied, collected, abrogated, diminished or increased, and no bonds shall be issued hereunder until such action has been authorized by a majority of the votes cast at an election held in the district for such purposes, at which none but property taxpaying qualified voters of such district shall be entitled to vote.

"..."

Article 2785, V.A.C.S., in part, provides:

"Before an election is held to determin the proposition of the levy of such tax or the issuance of such bonds, a petition therefor, signed by twenty (20) or more, or a majority of those entitled to vote at such election, shall be presented to the County Judge of the county if for a common school district. . . . The petition, election order and notice of election shall in all cases either state the specific rate of tax to be voted on or that the rate shall not exceed the limit herein specified. . . .(underscoring ours)

Article 2794, V.A.C.S.,in part provides:

"At any time after the expiration of two years after any common school district has levied a school tax on itself, twenty property taxpaying qualified voters, or a majority of such voters of the district, may have an election held, upon the proper petition to the county judge, to determine whether such tax shall be abrogated, increased or diminished. Said election shall be held and conducted as other elections in said district. . . ."

Article 2795, V.A.C.S., in part, provides:

"The commissioners' court, at the time of levying taxes for county purposes, shall also levy upon all taxable property within any common school district the rate of tax so voted if a specific rate has been voted; otherwise said court shall levy such a rate within the limit so voted as has been determined by the board of trustees of said district and the county superintendent and certified to said court by the county superintendent. . . . (Underscoring ours)

We understand, from your letter, that the common school district has voted a $1.00 tax rate and that taxes have been collected on the basis of such rate; however, it was not stated whether the tax voted was a specific rate or whether said election authorized a levy not exceeding that limit ($1.00). Thus, in view of the provisions of Article 2785, supra, it will be necessary to determine from the statement contained in the petition, election order and notice of said election whether a specific rate of tax was voted, or whether the rate so voted was not to exceed the limit $1.00) therein specified.

If the rate voted at said election was a specific rate, under the provisions of Article 2785, the commissioners' court shall levy such specific rate, and any change in said rate which the commissioners' court would be authorized to levy must be authorized by an election held in the district as provided in Article 2794.

If the rate voted at the election to which you refer was a rate not to exceed the limit specified in the petition, election order and notice of said election, under the provisions of Article 2785, the commissioners' court is authorized to levy such rate as determined by the trustees of said district and the county superintendent and certified to said court by the county superintendent. Thus, when the rate voted was a rate not to exceed a certain limit, any adjustment made (within said limit) must be made by the trustees of said district and the county superintendent, for the rate which the commissioners' court is authorized to levy in such instance is that rate certified to it by the county superintendent.

You also inquired as to the disposition oof the surplus funds of said school district when all of the bonded indebtedness has been paid. As to the disposition of the surplus funds in the sinking fund when all of the bonded indebtedness has been paid, this departmentheld in Opinion No. O-2657 that such surplus could be transferred to the local maintenance fund. We are enclosing herewith a copy of said opinion.

Since, under the facts given, there is no longer any necessity to levy a bond tax, the tax rate for maintenance is automatically increased to one dollar, provided that the maintenance tax heretofore voted was a specific tax rate of one dollar. Therefore, if such maintenance tax heretofore voted is more than sufficient for the maintenance of the school, the maintenance tax rate may be reduced by an election held for that purpose as provided in Section 4 of H. B. No. 800 and Article 2794, both of which are quoted above.

If the maintenance tax heretofore voted by the district was voted as a maximum tax, then the rate may be reduced by the board of trustees and the county superintendent and such rate certified to the commissioners' court and levied by the court in accordance with the provisions of Article 2795 hereinabove quoted.

We call your attention that the eligibility of a common school district for Equalization Aid from the State is affected in certain instances, when the tax rate for maintenance of said district is reduced. For a discussion of this matter, we refer you to our Opinion No. O-6768, a copy of which is enclosed herewith.

We trust that the foregoing satisfactorily answers your inquiries.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By /s/ J. A. Ellis
J. A. Ellis,
Assistant

JAE:rt:LJ:egw

APPROVED OCT 13 1945
/s/ Carlos Ashley
FIRST ASSISTANT ATTORNEY GENERAL